IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

S. SHANE SMITH,                     )
                                    )
            Plaintiff,              )
                                    )
        v.                          )       1:18CV914
                                    )
NORTH CAROLINA DEPARTMENT OF        )
SAFETY, et al.,                     )
                                    )
            Defendant(s).            )

MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, S. Shane Smith, submitted a pro se Complaint under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act of 1973 (Docket Entry 2), and requested permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § l915(a) (Docket Entry 1). Plaintiff is a prisoner of the State of North Carolina who, at the time he filed this action, was housed in this District at the Dan River Work Farm. As reflected on the docket, the State later transferred Plaintiff to Rutherford Correctional Center, which is located in the Western District of North Carolina. The Complaint alleges that several current and former prison officials at Dan River violated Plaintiff's rights in various ways and names those officials as Defendants. The Complaint also names the North Carolina Department of Public Safety (NCDPS) and several officials in that Department as Defendants, claiming mainly that they knew of, but failed to correct, the alleged abuses of Dan River officials. Plaintiff seeks damages, as well as injunctive relief. He also filed a Motion (Docket Entry 3) seeking an appointment of counsel, a Motion (Docket Entry 4) seeking a temporary

restraining order and/or a preliminary injunction, and a Motion (Docket Entry 7) seeking expedited review of his case. For the reasons that follow, the Court should dismiss all of the claims in the Complaint except for two retaliation claims against two Defendants. The Court should also deny as moot Plaintiff's request for a temporary restraining order or preliminary injunction. Finally, Plaintiff's requests for appointment of counsel and for expedited review will be denied and the case will be stayed pending an initial partial payment or proof of lack of funds to do so.

## Legal Background

Because Plaintiff is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," this Court has an obligation to "review" this Complaint. 28 U.S.C. § 1915A(a). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if [it] – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

Applicable here, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1), when the complaint does not "contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557). This

standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

Discussion

According to the Complaint:

Plaintiff was born with no fingers or toes, which significantly limits his ability to perform many common tasks, including walking, writing, standing, working, and grasping objects. (Docket Entry 2, § IV(B)(1).) He also suffers from very sensitive skin. (Id.) In 2011, Plaintiff sued prison officials under § 1983 and later entered into a settlement agreement in which the officials agreed to provide Plaintiff with certain accommodations, including special clothing. (Id., § IV(B)(9), (64)-(65).) Plaintiff transferred to the Dan River facility in August of 2016. (Id., § IV(B)(11).) He applied for several work positions before receiving a designation in September of 2016 as the inventory stock clerk in the prison

---

[1]Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

kitchen.  (Id., § IV(B)(12)-(13).)  In October of 2016, Defendant Michael Roach, the Assistant Superintendent at Dan River, removed Plaintiff from that position because Roach "did not approve of the footwear prison officials had been providing to accommodate Plaintiff's disability."  (Id., § IV(B)(14).)  Plaintiff then attempted to obtain footwear from prison officials that would allow him to return to his job, but Roach, as well as Defendants Litonya Carter (the ADA coordinator for the NCDPS) and Timothy Willis (then the Superintendent at Dan River), would not provide Plaintiff with the required footwear.  (Id., § IV(B)(15).)  At some point, Plaintiff purchased the proper footwear himself and returned to work.  (Id., § IV(B)(16).)  The missed time at work cost Plaintiff wages and sentence reduction credits.  (Id., § IV(B)(15), (17).)

These allegations do not state any viable claim for relief.  As noted above, the Complaint attempts to assert a claim under the ADA and Rehabilitation Act; however, "the ADA and the Rehabilitation Act do not provide any causes of action against individual defendants in their individual capacities."  Keith-Foust v. North Carolina Central Univ., No. 1:15CV470, 2016 WL 4256952, at *13 (M.D.N.C. Aug. 11, 2016) (unpublished).  Further, to the extent that Plaintiff seeks to proceed directly against a state agency or asserts official capacity claims against individual Defendants, those statutory disability-related claims raise complex issues regarding sovereign immunity.  See generally United States v. Georgia, 546 U.S. 151 (2006); Chase v. Baskerville, 508 F. Supp. 2d 492 (E.D. Va. 2007).[2]  In this

---

[2] Nor can Plaintiff maintain a claim under § 1983 against a state agency or individual defendants employed by a state agency in their official capacity except for injunctive relief.  See generally Will v.
(continued...)

instance, the Court need not grapple with those issues because Plaintiff's footwear-related disability claim fails for a more basic reason:

> [T]he ADA [ ] mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Supreme Court has held that this provision applies to state prisoners. See Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 213, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) ( "[T]he plain text of Title II of the ADA unambiguously extends to state prison inmates."). In order to state a violation of Title II, a plaintiff must allege that: 1) he or she is a qualified individual with a disability; and 2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reasons of his or her disability. See Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir.2004); Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1231 (S.D.N.Y.2003). The second prong requires the disabled plaintiff to allege that his or her mistreatment "was motivated by either discriminatory animus or ill will due to disability." Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 112 (2d Cir.2001). This animus requirement reflects the purpose of Title II, which is "to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir.1998).

Elbert v. New York State Dept. of Correctional Services, 751 F. Supp. 2d 590, 594-95 (S.D.N.Y. 2010). see also Westminister Nursing Ctr. v. Cohen, No. 5:17CV96, 2017 WL 5632661, at *4 (E.D.N.C. Nov. 22, 2017) (unpublished) ("Due to the similar statutory language in the ADA and Rehabilitation Act, they are construed to impose the same requirements."

Here, the Complaint does not allege that the footwear that Roach required Plaintiff to use on the job differed from that used by non-disabled prisoners or that Defendants provided

---

[2](...continued)
Michigan Dep't of State Police, 491 U.S. 58 (1989).

the required footwear for free to non-disabled prisoners to work in the kitchen. Therefore, the Complaint fails to allege facts showing that Defendants treated Plaintiff differently than his nondisabled counterparts resulting in his exclusion from the kitchen job. Finally, Plaintiff's transfer to a new prison moots any request for injunctive relief on this front.

As for a claim under § 1983 based on Plaintiff's alleged temporary exclusion from the kitchen job, prisoners do "not have a constitutionally protected liberty or property interest in [a] prison job." Backus v. Ward, No. 98-6331, 1998 WL 372377, at *1 (4th Cir. June 8, 1998) (unpublished) (citing Bulger v. U.S. Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995)). Also, to the extent that Plaintiff seeks sentence reduction credits, that claim cannot proceed under § 1983, but instead only in a habeas corpus action: "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." Muhammad v. Close, 540 U.S. 749, 750 (2004). Moreover, habeas corpus actions represent the only avenue to federal court for "state prisoners who were deprived of good-conduct-time credits." Preiser v. Rodriguez, 411 U.S. 475, 500 (1973) (discussing good time credits in the context of prison disciplinary proceedings); accord Wilkinson v. Dotson, 544 U.S. 74, 79 (2005) ("Because an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks 'the very duration of physical confinement' and thus lies at 'the core of habeas corpus.'" (internal citations and ellipses omitted) (quoting Preiser, 411 U.S. at 487-88)); see also Pierce v. Freeman, No. 95-7031, 1997 WL 467533, at *1-2 (4th Cir. Aug. 15, 1997) (unpublished;

decision without opinion, 121 F.3d 699) ("[A] prisoner seeking the restoration of good time credits in federal court may only do so by way of writ of habeas corpus." (citing Preiser, 411 U.S. at 500)). Because Plaintiff seeks an earlier release from prison, he must bring any such request in a habeas action rather than under § 1983.

The Complaint's next set of allegations concerns Plaintiff's work in the kitchen under Defendants Aleisha Adams and Kenneth Day, Foodservice Managers for Dan River. Specifically, the Complaint asserts that these Defendants regularly summoned Plaintiff to work early, but failed to record any overtime hours, thereby denying him extra sentence reduction credits. (Docket Entry 2, § IV(B)(17)-(18).) The Complaint, however, raises no claim of disability discrimination in connection with this allegation, and, as stated above, Plaintiff cannot seek a sentence reduction under § 1983, but must file a habeas action after exhausting any available state court remedies.

The Complaint also alleges that Adams and Day violated Plaintiff's rights in another way. In that regard, the Complaint states that Plaintiff discovered during the course of his job that Adams was removing items from inventory for consumption by herself and other staff members and manipulating invoices to cover the theft. (Id., § IV(B)(19).) When Plaintiff reported his discovery to Day, Day allegedly told Adams, after which both threatened Plaintiff and filed false disciplinary charges against him for theft of property. (Id., § IV(B)(19)-(21).) These charges resulted in a disciplinary conviction for Plaintiff, his removal from his job assignment, and his removal from his housing unit and placement in a more dangerous housing unit. (Id., § IV(B)(22)-(26).) The Complaint does not make clear

whether Plaintiff seeks damages due to the disciplinary conviction or simply to have that conviction reversed. However, in either event, his claim necessarily would undermine that conviction. Plaintiff may not do so without first showing that such conviction was reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or, finally, called into question by a federal court through the issuance of a writ of habeas corpus. See generally Heck v. Humphrey, 512 U.S. 477 (1994); see also Pierce, 1997 WL 467533 at *1-2 ("Neither can [a prisoner] proceed on [a] claim for monetary damages for the alleged deprivation of good-time credits without due process of law. . . . [Such] claims, if proven, would necessarily imply the invalidity of the revocation of [the] good time credits . . . and are consequently barred under the rule announced in Heck." (citing Edwards v. Balisok, 520 U.S. 641 (1997)) (internal citations omitted)). Plaintiff has not made any such showing, which means that any claims related to his disciplinary conviction fall short.

The Complaint also asserts claims related to Plaintiff's use of a word processor and computer. Due to Plaintiff's difficulty writing, prison officials provided him at some point in the past with a Brother ML-500 word processor. (Docket Entry 2, § IV(B)(29).) According to the Complaint, using that machine caused pain where Plaintiff's fingers should be and he "made repeated efforts" to report that fact to prison officials, including Defendants Eric Hooks (the Secretary of the NCDPS), Kenneth Lassiter (the Director of the Division of Prisons within the NCDPS), Carter, Willis, Amanda Cobb (the current Superintendent at Dan River), Roach, and Mark Moore (the Facility Intelligence Officer at Dan River). (Id., § IV(B)(30).) The Complaint does not elucidate the nature of these "efforts" and only

vaguely states that Plaintiff's "pleas for assistance are regularly ignored." (Id.) To the extent these allegations purport to assert any claim, they fail as a matter of law, because "vague and conclusory allegations are not sufficient." Doe v. Virginia Dep't of State Police, 713 F.3d 745, 754 (4th Cir. 2013) (internal quotation marks omitted).

The Complaint further alleges that unidentified prison officials determined in 2016, while Plaintiff was housed at Warren Correctional Institution, that the word processor was obsolete, unreliable, and difficult to maintain. (Docket Entry 2, § IV(B)(32).) Therefore, they provided him with access to a non-networked stand-alone computer and printer. (Id.) This arrangement continued when Plaintiff transferred to Dan River in 2016. (Id., § IV(B)(34).) However, the Complaint alleges that, in October of 2016, Plaintiff submitted an administrative grievance because prison officials breached the terms of the 2011 Settlement Agreement, whereupon Roach retaliated by blocking Plaintiff's access to the computer, retrieving the old word processor, and scheduling access to the word processor at times when Plaintiff could not use it. (Id., § IV(B)(36)-(38).) When Plaintiff complained, Roach allegedly told Plaintiff to stop complaining or Roach would schedule access for one o'clock in the morning. (Id., § IV(B)(38).)

The Complaint also asserts that Roach threatened to take Plaintiff's personal property from his cell after he submitted another grievance and directed Moore to read Plaintiff's used ribbon cartridges from the word processor to see what Plaintiff typed. (Id., § IV(B)(41), (45).) According to the Complaint, the word processor breaks frequently, often prints incorrectly, and Moore accuses Plaintiff of breaking it intentionally. (Id., § IV(B)(48), (50),

(56).) Plaintiff allegedly fears that Roach or Moore will cut off his access to the word processor, but he still filed multiple administrative grievances about the word processor and Moore's reading of the ribbon cartridges. (Id., § IV(B)(60), (61).) The Complaint states that Moore summoned Plaintiff following the filing of one such grievance and asked why he submitted the grievance and how he (Moore) was supposed to respond. (Id., § IV(B)(62).) Plaintiff views that interaction as a violation of North Carolina prison policy regarding communications with prisoners who file grievances. (Id., § IV(B)(63).)

As an initial matter any claims by Plaintiff seeking injunctive relief, whether regarding access to a computer or freedom from review of his ribbon cartridges, became moot upon his transfer away from Roach, Moore, and Dan River. Nor does the Complaint state any claim under the ADA or Rehabilitation Act based on the word processor allegations because they do not sufficiently show denial or exclusion from any service or activity due to disability. The Complaint does state at one point that Petitioner wished to take educational classes, but could not because he believed he could not timely complete assignments on the word processor. (Id., § IV(B)(58).) However, this allegation remains too vague to state a claim. See Doe, 713 F.3d at 754. The Complaint does not identify the classes Plaintiff allegedly missed, describe the assignments, or explain his inability to complete them.

As for any potential claims under § 1983, the Complaint mostly fails to state a claim. The one exception concerns Roach's alleged retaliation against Plaintiff for filing administrative grievances by replacing the computer with the word processor, as well as

limiting and altering Plaintiff's hours of use. See generally Booker v. South Carolina Dep't of Corr., 855 F. 3d 533, 544-46 (4th Cir. 2017).

To the extent Plaintiff has attempted to claim that Defendants denied him access to the courts by making him use the word processor, Plaintiff must show that Defendants' actions actually deprived him of the ability to pursue nonfrivolous post conviction or civil rights claims. See Jackson v. Wiley, 352 F. Supp. 2d 666, 679-80 (E.D. Va.) (citing Lewis v. Casey, 518 U.S. 343 354-55 (1996)), aff'd, 103 F. App'x 505 (4th Cir. 2004). Plaintiff does not identify any such claim that he lost by using the word processor. Plaintiff's allegation that Moore, at Roach's direction, read Plaintiff's privileged legal communications on the used ribbon cartridges similarly fails on vagueness grounds because the Complaint identifies no such communications. See Doe, 713 F.3d at 754. Finally, as to any claim that Moore communicated with Plaintiff in violation of North Carolina prison policy regarding a grievance that he filed, § 1983 protects against federal statutory and constitutional violations, not violations of state policy. The Complaint identifies no federal violation in connection with this allegation. Therefore, all of Plaintiff's claims related to his use of the word processor fail to state a claim with the exception of his retaliation claim under § 1983 against Roach.

Plaintiff's last set of allegations relates to the clothing, specifically the pants, provided to him under the 2011 Settlement Agreement. According to the Complaint, officials must provide Plaintiff with one hundred percent cotton clothing and accommodate his physical disabilities. (Docket Entry 2, § IV(B)(54).) At the time of the 2011 Settlement Agreement,

both the pants purchased from an outside supplier for Plaintiff by prison officials and those manufactured inside the North Carolina prison system and issued to non-disabled inmates had two front pockets and two back pockets. (Id., § IV(B)(69).) The Complaint alleges that the prison system later began manufacturing pants with only one back pocket and, in 2017, officials removed all of the front and back pockets and included only two side pockets. (Id., § IV(B)(70)-(71).) At first, that change allegedly did not impact Plaintiff because the pants purchased for him continued to contain pockets which he used to function with his disability. (Id., § IV(B)(72)-(74), (76).) However, the Complaint asserts that, in September of 2017, Roach took those pants and issued Plaintiff cotton pants with a single pocket on each side similar to those issued to other prisoners. (Id., § IV(B)(76)-(77).) According to the Complaint, Plaintiff could not retrieve items from the pockets of the new pants due to his disability. (Id., § IV(B)(78).)

Plaintiff's claims in this regard focus first on his identification (hereinafter ID) card. Specifically, the Complaint alleges that prison regulations require prisoners to carry their ID cards on their persons any time they leave their dormitory and to use the ID cards to receive meals, medical care, and mail, purchase items from the commissary, check out library books, get haircuts, and participate in extracurricular activities. (Id., § IV(B)(80)-(81).) They allegedly must also produce their ID card upon request by prison staff or risk a disciplinary infraction. (Id., § IV(B)(81)-(82).) The Complaint alleges that Plaintiff could not carry his ID card in the new pants because he could not retrieve it from the new style of pockets. (Id., § IV(B)(87).) Further, Roach allegedly instructed prison workers not to manually enter

Plaintiff's prisoner identification number into the computer at meal time (a service they routinely provided for other prisoners) and not to serve Plaintiff a meal without swiping his ID card. (Id., § IV(B)(94)-(95).) For a time, Plaintiff allegedly carried the ID card in his coat. (Id., § IV(B)(106).) However, in April of 2018, prison officials allegedly prohibited the possession of coats. (Id.) According to the Complaint, Plaintiff was "regularly" turned away from meals because he could not present his ID card. (Id., § IV(B)(96).) In addition, the Complaint states that Plaintiff met with Defendants Willis, Cobb, and Moore about this problem, but that nothing changed. (Id., § IV(B)(108).) Finally, the Complaint attributes Roach's actions to harassment and retaliation for Plaintiff's grievances and court filings. (Id., § IV(B)(109).) In support, the Complaint relies on the allegation that Roach and Moore declared the pocket design of Plaintiff's original pants a security risk, but that the prison continued to issue short pants to other prisoners that included the old style of pockets, as well as coats (during the winter months) with pockets. (Id., § IV(B)(97)-(103).)

Plaintiff's second objection to the change in pockets concerns the impact on his ability to carry various small assistive devices, including nail clippers and tweezers, to help him with routine daily tasks. (Id., § IV(B)(88).) The Complaint, in particular, alleges that Plaintiff broke a tooth while attempting to open a food package without the use of his assistive devices and that prison dental workers informed him that they cannot repair the tooth, but must remove it under prison policies. (Id., § IV(B)(89)-(90).)

To the extent that Plaintiff seeks relief under the ADA and Rehabilitation Act based on the changes to his pants, these claims fail for the same reasons as his other such claims.

He cannot proceed against individual Defendants, any requests for injunctive relief became moot in light of his transfer away from Dan River, and the Complaint does not show that the change regarding pants occurred because of disability-related discriminatory animus; to the contrary, the Complaint acknowledges that the move to "pants with no front or back pockets" represented a "cost-cutting measure" (id., § IV(B)(71)) and that Roach and Moore took away Plaintiff's pants with more suitable pockets not to discriminate against him based on his disability, but rather to retaliate against him for filing grievances and/or court papers (see id., § IV(B)(97-109)).

The Complaint also largely fails to state any claim under § 1983 regarding these matters. Notably, despite reference to fear of discipline for failing to carry his ID card, Plaintiff has not alleged that such action occurred. Likewise, although withholding food can violate a prisoner's federal constitutional rights, if it results in inadequate nutrition, see King v. McPherson, No. 0:15-cv-2358-RBH, 2017 WL 490111, at *7 (D.S.C. Feb. 6, 2017) (unpublished) (citing King v. Lewis, 358 F. App'x 459, 460 (4th Cir. 2009)), the Complaint does not allege facts sufficient to demonstrate that Plaintiff received inadequate nutrition at any point. In fact, the Complaint does not even identify any harm from any exclusion from meals. Under these circumstance, the Complaint fails to state explain any claim for relief based on denial of meals.

Nor does Plaintiff's alleged cracked tooth support a claim under § 1983. He chose to use his teeth to immediately open a food package rather than seek assistance or wait until he

could use his normal assistive devices. He cannot obtain damages for violation of his federal statutory or constitutional rights based on his own ill-advised decision.

Conversely, as with Plaintiff's allegations regarding the word processor, his allegations in connection with his pants do state a claim for relief based on retaliation as to Roach and Moore. They allegedly confiscated his pants with usable pockets and replaced them with pants with unusable pockets to retaliate against Plaintiff for his administrative and court filings and falsely declared the old style of pants a "security risk" in order to accomplish their retaliatory objective. Although not the strongest allegations of retaliation, they suffice at this point to state a claim against Roach and Moore. All other claims related to Plaintiff's pants fail as a matter of law.

In addition to the Complaint, Plaintiff also filed a Motion (Docket Entry 3) seeking appointment of counsel, a Motion (Docket Entry 4) seeking a temporary restraining order directing officials to return the pants taken at Dan River by Roach, and a Motion (Docket Entry 7) seeking expedited review of his case. Plaintiff's transfer to another facility moots the Motion seeking a restraining order, while the entry of this Order and Recommendation moots the request for review. As for the Motion seeking counsel, under 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, "a plaintiff does not have an absolute right to appointment of counsel." Miller v. Simmons, 814 F.2d 962, 966 (4th Cir. 1987). Instead, court assistance in obtaining counsel constitutes "a matter within the discretion of the District Court. It is a privilege and not a right." Bowman v. White, 388 F.2d 756, 761 (4th Cir. 1968). In this regard, the United

States Court of Appeals for the Fourth Circuit has held that a litigant "must show that his case is one with exceptional circumstances." Miller, 814 F.2d at 966 (citing Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975)). "The question of whether such circumstances exist in any particular case hinges on characteristics of the claim and the litigant." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds, Mallard v. United States Dist. Ct. for S.D. of Iowa, 490 U.S. 296 (1989) (holding that Section 1915 does not authorize compulsory appointment of counsel). Specifically, "[i]f it is apparent to the district court that a *pro se* litigant has a colorable claim but lacks the capacity to present it, the district court should appoint counsel to assist him." Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978).

Here Plaintiff has set out the basis for his claims, some of which will proceed. Even as to the claims not proceeding, Plaintiff does not lack the capacity to present those claims, as he submitted dozens of typed pages in support of them; the Complaint merely fails to offer appropriate factual allegations to support those claims for relief. Simply put, Plaintiff has not shown exceptional circumstances. As for Plaintiff's request to proceed in forma pauperis, § 1915(b)(1) requires that he make an initial payment of $20.00.

## Conclusion

The Complaint fails to state a claim, except as to retaliation by Roach and Moore. Plaintiff's transfer has mooted his request for temporary or preliminary injunctive relief and the entry of this Order and Recommendation has mooted his request for prompt action on his case. The lack of exceptional circumstances forecloses appointment of counsel and the

surviving claims will not proceed until Plaintiff makes an initial partial payment or shows an inability to so do.

IT IS THEREFORE RECOMMENDED that Plaintiff's claims be dismissed with the exception of his § 1983 claims against Defendant Roach for retaliating against Plaintiff for filing grievances and court cases by removing his access to a computer, restricting his access to a word processor, and changing the type of his pants and against Defendant Moore for his participation in the retaliation by changing the type of Plaintiff's pants. All other claims should be dismissed for failing to state a claim.

IT IS FURTHER RECOMMENDED that Plaintiff's Motion (Docket Entry 4) seeking a temporary restraining order and be denied as moot.

IT IS ORDERED that Plaintiff's Motion (Docket Entry 3) seeking an appointment of counsel and Motion (Docket Entry 7) seeking expedited review be denied.

IT IS FURTHER ORDERED that in forma pauperis status is granted for the sole purpose of entering this Order and Recommendation.

IT IS FURTHER ORDERED that within twenty (20) days from the entry of this Order Plaintiff make an initial payment of $20.00 (which represents 20% of the greater of the average monthly deposits into or the balance in Plaintiff's account for the 6-month period immediately preceding filing of this complaint).

IT IS FURTHER ORDERED that, as a condition of Plaintiff's proceeding *in forma pauperis*, Plaintiff's trust officer shall be directed to pay to the Clerk of this Court 20% of

all deposits to his account starting with the month of February of 2019, and thereafter each time that the amount in the account exceeds $10.00 until the $350.00 filing fee has been paid.

IT IS FURTHER ORDERED that all payments shall be designated as made in payment of the filing fee for Civil Action No. 1:18CV914, and shall be paid to the Clerk, U.S. District Court for the Middle District of North Carolina. In the event Plaintiff is transferred to another institution, the balance due shall be collected and paid to the Clerk by the custodian at Plaintiff's next institution. A copy of this Order shall be sent to Plaintiff's current custodian.

IT IS FURTHER ORDERED that this action be filed, but that further proceedings and service of summons as to the remaining Defendants be stayed until Plaintiff either (1) submits to the Court the initial payment noted above, or (2) in the alternative submits a motion for relief from the stay, and a statement made under penalty of perjury that he has not had access to any funds for the initial payment noted above for the 60-day period.

FAILURE TO COMPLY WITH THIS ORDER IN A TIMELY MANNER WILL RESULT IN DISMISSAL OF THIS ACTION WITHOUT FURTHER NOTICE TO PLAINTIFF.

This, the 5th day of April, 2019.

                                        /s/ L. Patrick Auld
                                           **L. Patrick Auld**
                                   **United States Magistrate Judge**